May it please the Court, my name is Ronald Connolly and I'm counsel for Palomar Medical Center. I request to reserve three minutes for rebuttal. The District Court's decision should be reversed. The Medicare statute specifically requires that the Secretary reopen claims only under guidelines established by the Secretary and regulations. The Secretary has issued regulations with very specific deadlines for reopening claims and she has established a defined good cause standard for reopening claims between one and four years after payment. Mr. Connolly, as I understand it, Congress passed subsequent legislation creating this RAC program which I view as sort of a super auditor which is sort of outside the normal layers of review, is that correct? That's correct, Your Honor. And so why wouldn't the Congressional Act trump the Secretary's regulations? If Congress wants an overseer to come in and do another look to make sure that taxpayer monies are being appropriately expended, why wouldn't that constitute good cause as a matter of law even if the regulations were applicable? Well, Your Honor, nothing in the RAC enabling statute abrogated the requirement that the Secretary reopen claims only under guidelines established in regulations. It's a parallel auditing scheme. Congress did not amend any of the requirements for Medicare appeals or reopening of claims. But they created, in essence, this new class of auditor to look at previously paid claims, did they not? They did, Your Honor. Congress creates new classes of auditors all the time. Congress recently, several years ago, revised the statute to create Medicare administrative contractors. Congress created what are known as zone program integrity contractors which are empowered to go out and ferret out fraud and abuse. And those contractors, and at no time did Congress revise these auditing and reopening requirements for those either. Those contractors are bound by the good cause requirement. Well, but the problem here, as I understand it, is that Congress looked at how these taxpayer monies were being expended and concluded, I think I saw a figure of $1.27 billion in overpayments under the existing program. And that's why they created this RAC program. Why are we paying too much under our existing regulations? So what's wrong with Congress sending in a new team of auditors, notwithstanding the normal deadlines that would apply to a provider like Palomar, to go back and do another look and see whether or not the existing system is running as Congress wants it to run? The Secretary's position is not that Congress abrogated those. The Secretary's position is that there is no private enforcement of those deadlines. Her position relies not upon the RAC enabling statute, but her interpretation of her regulations governing reopening of claims. Well, I think you're talking about two different things. One is the reopening, and that is whether or not you can appeal the decision to reopen the claim. I think that's a separate question from whether or not the RAC has to comply with these pre-existing guidelines when we've created, in essence, a new level of audit. And as I said, Your Honor, I believe that the Secretary's position is that the RAC does have to comply. Okay. Well, I'll ask counsel for the Secretary when she's up. We'll see what she has to say on that subject. I'm just curious. How big is the auditing staff that the Secretary has? I mean, just as a citizen, I'd like to know. Judge Pregerson, I don't have those figures at my fingertips. I will say, as I mentioned a moment ago, that the Secretary employs many different auditors. There are at least four or five different types of auditors out there auditing sometimes the same claims in the same hospitals. So while there are a lot of Medicare providers and there are a large volume of Medicare claims, there is also a very robust and rigorous audit scheme in place. Well, frankly, I've never encountered a situation, personally or otherwise, where bills were audited. I'm talking about myself. Sometimes we have regulators and auditors, like at one time throughout the southern part of the state of California, as I recall, we had one or two at the most. Clean Water Act inspectors that would go to all the plants and, you know, it's totally inadequate. I mean, do we have a situation like this here? These days you don't know how many auditors there are. I don't know how many human beings these audit contractors employ. I do know from experience with my clients that there is a very rigorous audit program in place and Medicare providers frequently are audited, hundreds of claims are reviewed, and those providers have to go through an established appeals process. But apparently that existing mechanism didn't work very well in this case because the ultimate conclusion upheld at every level of appeal was that the services provided on an inpatient basis for rehabilitation by Palomar were not properly claimed against Medicare. And you're not challenging that determination, is that it? We are not challenging that. So I guess we're back to, you know, if the system is so robust as you describe it, why is it not working very well? That apparently was Congress's concern when it enacted the new statute creating this RAC auditor. Well, I can say that the system gets more robust all the time. And I would also point out that these timelines and standards exist for administrative finality. Inherent in the deadlines themselves is the notion that there will be some overpayments as time goes by that are not recouped and some underpayments that are not paid. Their administrative finality exists because as time goes on, these claims are more difficult to litigate. Memories fade, staff leaves, records get lost. And so as time proceeds, the standards become greater for reopening and auditing these claims. Although there is a specific exception, is there not, for fraud? That is true, Your Honor. There is a specific exception for fraud or what's known as similar fault, which is basically fraud without the requirement of knowledge. And under the Secretary's argument, there really is no limiting principle, although a claim can be reopened for fraud and similar fault at any time. Her position would lead to the conclusion that those requirements are not enforceable either and that a claim even 10, 20 or 30 years old could be reopened in audit with no private enforcement of those deadlines. So really, there is no private enforcement of any of these deadlines. Well, of course, one of the rationales for fraud is that until the victim has sufficient facts to know that, in this case, HHS has been defrauded, there's no reason to believe that the claim was fraudulently paid. And the law has always recognized an exception for statute of limitation purposes to the date of discovery of the fraud. That's correct, Your Honor, and we don't dispute the government's ability to audit based on fraud or similar fault. That's clearly stated in the regulation that they can do that at any time. Our point is that after four years, showing a fraud or similar fault is required, and under the Secretary's interpretation of these regulations, she would not have to show fraud or similar fault. She could come forward with some lesser evidence or no evidence at all even after four years under her reading of the regulations, and the hospital would have no recourse. I want to be clear. I'm not suggesting for a moment that Palomar is engaged in any fraudulent behavior. It's just a question of under what circumstances does Congress have the right to upset the settled expectations of finality on the payment of the claim. And I guess my question to you, which we started with, was if Congress looks at the way that the Medicare and Medicaid programs are being administered and concludes that it is paying in excess of a billion dollars in overpayment, and that is significant enough to Congress to decide we'd better appoint a special auditor to go in and discover why that is so, presumably to make recommendations to Congress to tighten up the claims processing, why isn't that good cause even within the meaning of the existing regulations to reopen a class of claims? Well, the regulation defines good cause as new and material evidence, and when Congress passed the RAC-enabling legislation, they did not have set that definition. So although Congress could upset some settled expectations of finality, we argue that they did not do so here. They did not upset the regulatory definition of good cause, which has existed in one form or another in Medicare and Social Security before that for at least 40 years. Well, I mean, if Congress knows that billions of dollars are being lost through the system we have now, I mean, that's a big issue in this country. It's a big problem, and if Congress sought to remedy it through whatever compromises they go through, would you say that Congress has the, I mean, they're the ultimate authority. They have the power to take these actions. If I may make two points, Your Honor. One is that it's not necessarily clear that billions of dollars are being lost. Many of these claims are just never appealed because the administrative burdens of doing so are too great. So although those non-appealed denials are recorded by Medicare as overpayments, they're just not contested because the dollars involved for the provider are too great to bother. Second, as I stated previously, we don't believe that Congress has upset these settled expectations of the deadlines and the regulatory good cause standard. Those have been around a long time, and nothing in the RAC-enabling statute itself or whatever legislative history there is out there indicates that Congress intended to change those. Those regulations are on the books, and they are binding on the agency and upon the agency's contractors. Counsel, can you help me? Under the Medicare Modernization Act, Section 306, which was passed in 2003, there's a provision for a waiver. The Secretary shall waive such provisions of Title 18 of the Social Security Act as may be necessary to provide for payment of services under the project, the RAC project. And that includes, does it not, the reopening provisions? Your Honor, the Secretary did not waive the reopening provisions. Well, but Congress did. And I believe it said that the Secretary... The Secretary shall waive. Isn't that a mandatory directive by Congress to an executive branch agency? Your Honor, if memory serves me, I believe that that provision goes more toward the payment structure for the recovery audit contractors, the contingency payment structure. Well, the reopening provision is found in Title 42, is it not? It is. 1395-FF. It is. And that would be within the scope of that waiver provision, wouldn't it? I believe so, Your Honor. I don't have that statute in front of me. Okay. You want to save us 33 seconds? I would, Your Honor. Thank you. Good morning, Your Honors. I'm Christine Cole from the Department of Justice on behalf of Secretary Sebelius. May it please the Court. The issue before the Court in this case is actually quite narrow. Is a provider entitled to an administrative appeal of a contractor's threshold decision whether to reopen an initial determination? As distinguished from the provider's right to appeal administratively through four levels of administrative appeal, the actual revised determination that results from that reopening. Now, in 2005, HHS adopted regulations, and there are two that are particularly relevant here, and those regulations were adopted through notice and comment rulemaking in which the public actively participated. And those regulations are worded in the clearest of terms. Under 42 CFR 405-926L, it states that actions that are not initial determinations and are not appealable include a contractor's decision to reopen or not to reopen an initial determination. And a companion regulation adopted at the same time is in Section 405-980A5, and it says, again, in the clearest of terms, a contractor's decision on whether to reopen is final and not subject to appeal. And is your position that the RAC is a contractor within the meaning of that regulation? That's correct, Your Honor. It is. There were no special requirements or waivers granted to the RAC program. It provides the background here because the particular determination that's at issue, Mr. Doe's determination, was one of the ones audited through the RAC program. But these regulations apply to the RACs and to just any of the contractors. So you agree with Mr. Connolly's statement that the regulations with regard to the one-year, four-year reopening apply? That's correct. And in this particular case, you missed the one year, did you not? So it must fall within the good cause provision of the four-year limit? That's correct, Your Honor. And what's your good cause? Well, the issue here, the Secretary's final decision that's before the court for review, did not address the good cause requirement because, as I just read from the two pertinent regulations, the decision to reopen, that threshold determination, is not subject to appeal in the administrative process. So it was not addressed by the final agency decision maker. Okay, but now it's here before us following exhaustion of administrative remedies by Palomar. A lawsuit has now been filed in federal court. Is the government taking the position that we have no jurisdiction to address the bona fides of the reopening under the good cause regulation? That's correct, Your Honor. And that's the Secretary says we can't look at that? It's not the Secretary, it's Congress. In the same provision that you were quoting from a little while ago, 1395FFB1A, it says that it's the provision that confers jurisdiction on the district court and obviously ultimately this court as well. Hold on a second for me. It's at A1 in the appendix to our brief. All right, I have it. If you look down, there's a reference to paragraph 2. It says, to judicial review of the Secretary's final decision. Now, the final decision of the Secretary in this case, and there's no dispute about this, is that it's the decision of the Medicare Appeals Council. And in that decision by the council, it referred to these regulations that I previously read and said that that threshold decision about reopening is not subject to administrative appeal. Well, that's the decision that's before this court. And there are numerous decisions of the Ninth Circuit, we quote them in our brief, I think Loma Linda is one, Anaheim is another, that interpret this jurisdiction conferring provision in the way that we do. And the proper remedy, if this court were to disagree with the max determination in this case, that the issue Mr. Connolly's client wants to raise is not appealable, then the proper remedy is a remand. Do me a favor. Don't speak in these initials. I'm sorry, Your Honor. I've got a whole page of them right here. I'm sorry. And so you talk about MAC, I'm thinking about McDonald's. I'm sorry, Your Honor. I agree. So, again, the issue before this court is who can enforce the good cause standard. One thing that I strongly disagree with Mr. Connolly on that he said at the opening of his argument is that the statute requires the secretary to reopen in accordance with the regulations. The statute doesn't require anything with respect to reopening. What it does is it authorizes the secretary in her discretion to establish a reopening procedure, which she has and the Supreme Court has repeatedly found that the whole reopening process, as opposed to the administrative appeal process that applies to the actual merits determination, reopening is a remedial matter. It's a matter that is a creature not of statute but of the agency's rulemaking authority. Counsel, that argument makes sense to me in order to avoid piecemeal litigation so that it seems right that Palomar cannot immediately challenge the reopening of the claim under the Supreme Court's precedent. But I'm still having a hard time swallowing the ultimate argument that you're making, that when Palomar has exhausted all of its administrative remedies and has now invoked its judicial review remedies, as the statute provides, that as a means of challenging the order to repay the $8,000, it is stopped to argue, and we are without jurisdiction to decide whether or not the claim should have been reopened in the first place in violation of the guidelines. Well, again, not only does it... You're trying to put us out of business. No, not at all, Your Honor. But, you know, I know you have a big workload. Actually, that's a very good point because what's underlying this statutory provision that says judicial review is of the secretary's final decision, that's consistent with well-established principles of administrative law, going back to Tucker-Truck doctrine of FPC versus Idaho power, which says if you're going to have this administrative agency-type proceeding, we want to hear what the agency has to say first on an issue. And that's all we're talking about here. And the agency's final decision-maker has not spoken to the question of good cause, again, because the agency's regulations preclude it. Isn't that inherent in the determination that Palomar loses on the redetermination that it has to refund the $8,000? Because otherwise the agency would have to conclude if the claim shouldn't have been reopened that Palomar doesn't have to pay the money back. But, again, Palomar gets four cracks at challenging the determination that it was overpaid. It can challenge the merits and, in fact, did so here and eventually dropped its further challenges. It didn't pursue that in the district court. I understand your point that it's kind of a clever end run around not having to challenge the substantive merits of the claim because what Palomar wants us to say is that the RAC didn't have the right to reopen it in the first place. Therefore, any order that was entered saying you have to repay the money is void ad amnesio. But to get there, we have to conclude that not only do we not have jurisdiction once the decision is made to reopen the claim, but we don't even have jurisdiction when the case is properly before us to review whether or not the claim should have been reopened. We haven't argued that you don't have jurisdiction in this case to entertain their complaint about the no appeal rule. We haven't quarreled with that. But your argument is we can only decide it one way, and that is that we don't have jurisdiction to decide that question. No, if you should disagree with us and somehow find that these regulations adopted through notice and comment rulemaking in 2005 had no effect and that they were somehow required by statute, again, our position is that they're not required at all, and the Secretary gets to make the rules as Congress created this or enacted this legislation. The Secretary gets to make the rules for reopening. If you disagree with all of that, then our point is the proper remedy in that case is a remand to the agency so that it can decide as the final agency decision maker in the first instance whether or not the good cause standard was satisfied here. And here below, there were two ‑‑  Well, there's a regulation that says that good cause may be established. Again, the regulation does not purport to list an exclusive ‑‑ does not purport to have an exclusive list of all of the criteria that would establish good cause. It only says that it may be established if there's new and material evidence that wasn't previously available or that evidence considered when the initial determination was made clearly shows on its face an obvious error was made. But let's assume that the RAC did a statistical sampling and said, we're going to audit every claim for inpatient rehabilitation services in excess of $7,500. And that's the reason that we looked at Mr. John Doe's claim here. Would that be good cause under your understanding of the term? It could be. It's not precluded by the agency's good cause regulation, the very regulation that Palomar relies on. And that demonstrates my point about the remand being the appropriate remedy should the court disagree with our principal argument in the case. We haven't heard from ‑‑ I'm sorry, Your Honor. Yes, I have a few questions for you. First of all, I'd like to just clarify to make sure I have the case law correct in my mind. As I understand it, several district courts, including the one here, have said that like a hospital cannot come in after there's been a determination of lack of medical necessity and they can't use a back door to challenge that decision on the grounds there was lack of good cause to reopen. My understanding is several district courts have said that, but that there is no circuit court that's addressed the issue. Is that right? That's correct, Judge Gold. There was a flurry of litigation initially. I think the providers were not happy about the rack process that Congress created. And, yes, there were two cases in Florida and two in California. And in each case, the district court concluded that it upheld the Secretary's decision that there was no administrative appeal. Follow-up question. Are any of these cases, other than this case here that we've got, are any of these other cases pending on appeal now in other circuit courts? No, Your Honor. The two out of Florida, there were appeals to the 11th Circuit in both of those cases, and they were withdrawn a month later voluntarily. And the case out of the Northern District of California, Livermore-Pleasanton, there was never any appeal. So the only court of appeals in which this issue is pending is this court. And to my knowledge, there's no litigation anywhere else in the country, as far as I know, involving this particular issue. In other words, things have settled down. The process is working well. Okay. Then my final question really relates to the statute that the regulations were passed under. As I understand it, Congress passed a statute, and I forget the number of it, but I'm sure it's on the tip of your tongue, that said that reopenings could be handled by the Secretary under guidelines established by the Secretary in regulation. But that's what Congress said. Correct. So my question is, if Congress says the Secretary can set guidelines for regulations, and then if the Secretary says reopenings are not a final decision and they're not going to be appealable, does that mean Congress has sort of delegated that issue of how to deal with reopenings to the Secretary so that we have no standard to review? Absolutely, Your Honor. I mean, we haven't made an argument that this is non-reviewable under the APA, but we have made an argument essentially, as Your Honor just articulated, that Congress gave the agency really sweeping discretion. Again, reopening itself is a remedial action. It's not this administrative appeal in which there are many stages required, both under the statute and under agency regulations. Reopening is a creature of the Secretary's regulations, and under those regulations it specifically and clearly says there is no appeal of the threshold decision to reopen. Thank you. I see that my time has expired. If there are no further questions, we ask that the district court's judgment be affirmed. Thank you, Your Honor. Thank you. Under Medicare, exhaustion of administrative remedies and federal court jurisdiction is not issue specific. The Supreme Court made this clear in the case of Illinois Council. It's the action that arises under Medicare, not the issue. So once there's a final decision of the agency, this court has jurisdiction to determine all issues before it, including the good cause requirement. I think what I just heard the government counsel say is there has been no final agency determination on the basis for reopening, and therefore if we agree with your argument, we would have to remand it to the agency to make that determination. Did I hear that correctly? Your Honor, our position is that you certainly would have that option. It's not required, but there's no jurisdictional bar to you making the determination. If you determine under doctrines of ripeness that it should be remanded, we don't object to your authority to do that. You attacked the reopening in front of the administrative law judge, and you convinced him that that was a meritorious attack and he ruled in your favor, but then the Medicare Appeals Council overturned the ALJ's determination, saying he didn't have the authority or jurisdiction to rule on that question, correct? That's correct. So is the record fully developed on that issue? Could we look at the same information that the ALJ based his decision on? Well, that's right, Your Honor. The record is fully developed. The record can't be supplemented at this point under the agency's regulations, and the RAC's reopening notice is pretty plain that they did not come forward with good cause. They didn't use the magic word good cause. We don't argue that they need to, but they didn't come forward with it. Did they explain how it was that they settled on Mr. Doe's claim with Palin? They said that they had identified a potential overpayment. But they didn't identify how it was that they made that determination. That's correct. So it could very well have been my hypothetical. We're going to take every claim over $7,500. That's right. They could have pulled the claims out of a hat. Regarding the discretion to reopen, Your Honor, the statute does give the secretary discretion to decide whether or not to reopen, but then creates a nondiscretionary obligation to abide by the regulations. And I would like to distinguish the Supreme Court's decision in your home momentarily. Your home concerned a hospital seeking to require a reopening. It's very different than this case. In that case, the court said that jurisdiction had not been conferred because there had been no revised final determination that gave either the administrative tribunal or court jurisdiction to review anything. A revised determination is required. Here, there was a revised determination, and it's at that point that the administrative tribunals and the courts have jurisdiction to review the revised determination and all aspects of it, including the contractor's actions and whether the audit was timeline. We contend that the secretary's regulations, as interpreted by the secretary over decades, frankly, those regulations forbid a hospital from stopping an audit midstream or from demanding an audit. But once an audit has been concluded and there is a revision, there is a right to contest the timeliness of the audit itself. This was clear under the secretary's pre-2005 regulations. And when she issued the 2005 regulations, she stated that she was consolidating and clarifying the previous regulations. The secretary, in her brief before this court, states that those 2005 regulations were restating longstanding policy. And if you look at that policy, it's clear that since the dawn of Medicare, hospitals have been able to challenge untimely reopenings. The Medicare Appeals Council so held in the case of UMDNJ University Hospital, under the previous regulations where they said that any untimely reopening is of no effect and set aside. There were several federal court cases under the prior regulations in which courts held that claimants could challenge the timeliness of a reopening and in fact should challenge the timeliness of a reopening in the administrative process. Subsequent to the 2008 regulations, the secretary issued new cost report reopening regulations in 2005 and 2008 that are virtually identical to these regulations. And since then, her provider reimbursement review board and the CMS administrator have both permitted challenges to untimely reopenings. Those regulations don't shield from review of the timeliness of a reopening. They simply ensure that the audit will go forward to conclusion and once there is a revision, then the hospital or any claimant has a right to challenge the auditor's actions both with the substance of the revision and the timeliness of the audit itself. I'm sorry, Your Honor, I believe my time is up. I'm sorry, I believe there's been a good argument on both sides and this is not an easy case and we appreciate your help. Thank you, Your Honor. And also for the government's help as well. Alan, Ashley.
judges: Pregerson, Gould, Tallman